PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTINE C. MURGIDA, | ) | |
| | ) | CASE NO.  5:17CV0229 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| OHIO DEPARTMENT OF | ) | |
| TRANSPORTATION, | ) | |
| DISTRICT NO. 11, *et al.*, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | [Resolving ECF No. 28] |

Pending is Defendant Ohio Department of Transportation's ("ODOT") Motion for Summary Judgment (ECF No. 28).  The Court has been advised, having reviewed the record, the parties' briefs, and the applicable law.  The Court has also considered the oral arguments of counsel offered during the Final Pretrial Conference held on April 11, 2018.  For the reasons set forth below, the motion is denied.[1]

## I.  Stipulated Facts and Background

The stipulated facts[2] are as follows:

1.  Plaintiff Christine C. Murgida is a female over the age of 18 and a resident of

---

[1]  The Court announced its decision during the Final Pretrial Conference.

[2]  *See* Joint Uncontested Facts (ECF No. 29).

North Canton, Ohio. ODOT is an administrative department of the State of Ohio created by

Ohio Rev. Code § 121.01, *et seq.* District 11 is a division of ODOT located at 2201 Reiser Ave.,

New Philadelphia, Ohio 44663. Plaintiff is assigned to and works out of District 11.

2. Plaintiff began working for ODOT as an Engineer in Training in 1985. She later

became a Transportation Engineer, Transportation Engineer 2 ("TE2") (1989-2000), and

Transportation Engineer 3 ("TE3") (2000-2010). In these roles, she worked out of District 4 and

was responsible for overseeing construction projects that grew in cost and complication as her

rank progressed. As a TE3, Plaintiff supervised up to 10 subordinates, which included TE2s and

Project Inspector 2s. Plaintiff is currently employed by ODOT as a TE3.

3. In 2010, Plaintiff applied for the District Construction Engineer ("DCE") position at

District 11. Richard Bible, then District Deputy Director ("DDD") for District 11, awarded

Plaintiff the position, which she assumed in June 2010. This position was classified as a

Transportation Engineer 5 ("TE5"). Plaintiff had not worked in District 11 prior to being hired

as DCE. During her tenure as DCE, Plaintiff had between 10 and 50 direct reports.

4. In January 2011, Lloyd MacAdam became DDD for District 11. At the time of

MacAdam's appointment as DDD, Plaintiff was serving as DCE.

5. In March 2012, ODOT Director Jerry Wray decided to eliminate the DCE position and

create the District Construction Administrator ("DCA") position. The change was implemented

across all 12 ODOT districts. MacAdam selected Nick Susich to serve as DCA for District 11.

6. Before MacAdam offered the DCA position to Susich, MacAdam related his intentions to Plaintiff. She recalls him sending out an email in which he stated that Susich had the respect of both ODOT employees and the construction industry.

7. After the DCE position was eliminated, Plaintiff remained a TE5 for some time, but received new duties. First, Murgida was assigned to be an area engineer. Plaintiff was ultimately assigned to be Local Public Agency ("LPA") Project Coordinator for the District 11 LPA Program, the position she holds to this day. As LPA Coordinator, Murgida oversees projects that are managed by local entities with federal funds and therefore require ODOT monitoring and approval.

8. In July 2015, Plaintiff was notified by the Ohio Department of Administrative Services ("DAS") that she would be subject to a job audit. A job audit is a process by which someone's job is evaluated to determine whether or not they are appropriately classified. Both Plaintiff and her supervisor, Susich, filled out paperwork to facilitate this process. Susich did not dispute the job description Murgida submitted to DAS.

9. After conducting the job audit, DAS determined Plaintiff was misclassified as a TE5, and her proper classification was TE3. Ohio Rev. Code § 124.14 permits the director of DAS to "reassign to a proper classification those positions that have been assigned to an improper classification," and dictates that, "[i]f the compensation of an employee in a reassigned position exceeds the maximum rate of pay for the employee's new classification, the employee shall be placed in pay step X and shall not receive an increase in compensation until the maximum rate of

pay for that classification exceeds the employee's compensation." As a result of the job audit, and in accordance with § 124.14, Plaintiff was re-classified as a TE3 and placed in step X.

10. DAS is a separate entity from ODOT and ODOT Director Wray is not the director of DAS.

11. On January 14, 2016, Plaintiff sent ODOT Director Wray an email with the subject, "Confidential Interview Request." ECF No. 29-1 is a true an accurate copy of the email message.

12. After she was not selected as DCA, Plaintiff looked for and made inquiries into other positions at ODOT. In 2012, Murgida was interested in the DCA position in District 12, but was not able to apply because only current district employees were invited to apply. In 2013, Plaintiff met with Jim Riley, Deputy Director Division of Innovative Delivery, regarding P3 projects, but "it lead nowhere." Deposition of Plaintiff (ECF No. 18) at PageID #: 284. She also applied for a position related to the Portsmouth bypass project in 2013. Plaintiff was invited to interview for this position, but did not receive an offer. ECF No. 29-2 contains true and accurate copies of documents confirming the aforementioned dates Plaintiff sought the positions mentioned. Murgida also applied for the central office Deputy Director of Construction position in 2014, but was not successful.

13. Plaintiff is aware of ODOT's sexual harassment and anti-retaliation policies, which were in place as far back as 2011. She received training on such policies throughout the course of her employment with ODOT.

14.  Plaintiff did not report the alleged instances of sexual harassment described in paragraphs 12 through 22 of the Complaint (ECF No. 1) to ODOT's office of equal employment opportunity.  She did, however, file four charges of discrimination.

15.  Attached to the Complaint (ECF No. 1) are two Dismissal and Notice of Rights letters relating to EEOC Charge Nos. 22A-2016-02099C (ECF No. 1-5) and 22A-2016-02260C (ECF No. 1-6).  Also attached to the Complaint (ECF No. 1) are EEOC Charge Nos. 532-2016-01679 (ECF No. 1-3) and 532-2016-01867 (ECF No. 1-4).

16.  In Ohio Civil Rights Commission ("OCRC") Charge No. AKR73(38394)06162016 (EEOC Charge No. 22A-2016-02099C), filed on June 16, 2016, Plaintiff alleges sex discrimination specifying demotion, harassment/sexual harassment, and "wage ceiling imposed" as the types of discrimination.  Her supporting statement reads, in full, as follows:  "I am a female engineer who has been targeted, demoted from a classified Transportation Engineer 5 position to a Transportation Engineer 3, and placed under a wage/'glass' ceiling."  Plaintiff lists the date of the discrimination as January 6, 2016.  ECF No. 29-3 is a true and accurate copy of OCRC Charge No. AKR73(38394)06162016 (EEOC Charge No. 22A-2016-02099C).

17.  In OCRC Charge No. AKR73(38427)07082016 (EEOC Charge No. 22A-2016-02260C), filed on July 8, 2016, Plaintiff alleges sex discrimination specifying "2.5% pay schedule increase denied" as the type of discrimination.  Her supporting statement reads, in full, as follows:  "I am a female engineer that has been targeted and denied a pay schedule increase."  Plaintiff lists the date of the discrimination as July 1, 2016.  ECF No. 29-4 is a true and accurate copy of OCRC Charge No. AKR73(38427)07082016 (EEOC Charge No. 22A-2016-02260C).

18. A cost of living increase was granted to eligible employees at ODOT in 2016 and 2017.

19. Plaintiff is an exempt employee.

Each DDD had the discretion to appoint or interview any candidate for the DCA position. MacAdam first offered the DCA position to Susan Goodie, the District Office Engineer for Construction, but she declined. MacAdam ultimately offered Nick Susich the position, and Susich accepted.

After the DCE position was eliminated, MacAdam allowed Susich, Plaintiff's direct supervisor, to re-define her role in the Construction Department. MacAdam played no role in that process. Plaintiff was initially assigned to be an area engineer, however, there were issues with that assignment. Susich next assigned Plaintiff to function as LPA Project Coordinator. She does not manage any subordinates in this position. Plaintiff became LPA coordinator in late 2012 or early 2013 and remains in that position.

When House Bill 64 ("HB 64") was passed in the summer of 2015, a new step, Step 7, was added to the pay scale that dictated Plaintiff's pay. HB 64 required any employee who had achieved the maximum rate of pay for their pay scale (step 6 of pay ranges 12-16) and worked at that rate for more than one year to be moved to Step 7, which would result in their receipt of a raise. Plaintiff was among those employees who were to advance to Step 7 and receive a raise as the result of HB 64.

Unbeknownst to Plaintiff at the time, MacAdam had engaged in a course of action to initiate a job audit of her position allegedly to prevent her from receiving the raise under HB 64 and when he was told he could not prevent her from receiving the raise, he pursued the job audit process. ECF No.18 at PageID #: 277-78; Deposition of Ben Kunze (ECF No. 33) at PageID #: 853, 858. This is the only job audit ever initiated by MacAdam. Deposition of Lloyd MacAdam (ECF No. 22) at PageID #: 622-23. According to Ben Kunze, Plaintiff's audit was the only one initiated in District 11 while he was employed there. ECF No. 33 at PageID #: 883-86. According to Brian Brown, ODOT HR Manager for Classification and Compensation, audits initiated by ODOT are not common, but not out of the ordinary. Deposition of Brian Brown (ECF No. 19) at PageID #: 341-42.

Plaintiff was subject to a job audit in the summer of 2015. Both she and Susich filled out paperwork to facilitate this process. As previously stated, Susich did not dispute the description of her job duties submitted by Plaintiff to DAS. Thus, DAS determined the appropriate classification for Plaintiff based on her own description of her duties. In a December 11, 2015 letter (ECF No. 19-7), Defendant was advised of DAS's determination Plaintiff's proper classification was TE3. Plaintiff appealed the reduction of her job classification to the Ohio State Personnel Board of Review ("OSPBR"). The matter is now on appeal to the Franklin County, Ohio Court of Common Pleas. *Murgida v. Ohio State Dept. of Transportation*, No. 16 CV 012032 (filed Dec. 21, 2016).

In December 2105 and January 2016, Plaintiff submitted Public Records Act requests to Defendant seeking information regarding the job audit. In the documents she received was a July 7, 2015 email from MacAdam to Anne Fornshell (ECF No. 22-5) in which he gave the history of his attempts to reclassify Plaintiff's job classification. ECF No. 22 at PageID #: 663-65. According to Plaintiff, this was the first time she was aware that MacAdam had attempted to reclassify her job classification from a TE5 to a TE3 immediately after she was removed from her DCE position and MacAdam appointed Susich to the new DCA position. Declaration of Plaintiff (ECF No. 34-1) at PageID #: 988, ¶ 3; Timeline (ECF No. 34-3).

Because Plaintiff's rate of pay well exceeded the highest rate of pay for a TE3, she was placed in step X and did not suffer a reduction in pay. However, as a result of being in step X, she did not receive the 2.5% Cost of Living increase she would otherwise have been entitled to in 2015 and 2016.

Plaintiff contends that she did not report the incidents as they occurred because as she stated: "You can't run for the hills at each and every moment, but what you do is you take your perseverance and your professionalism and you soldier through, and do you know what, most of those situations you end up getting the respect from those people and you move on." ECF No.18 at PageID #: 221. She reported the actions of MacAdam when what was indoctrinated in her from day-one at ODOT came to fruition: "when they touch your money, that's when you report if you want to stay alive in the political machine." ECF No.18 at PageID #: 221-22. According to Plaintiff, it was a standard unwritten rule  if you want to survive. That is when she reported it, when she lost money. She contends the reason she was not selected for the DCA position is

because she is a woman and did not play into MacAdam's treatment of her based on her gender, she did not play a subservient woman to man role with him and rejected his advances.

The first allegedly hostile interaction Plaintiff had with MacAdam occurred on January 10, 2011   his first day at District 11   when he allegedly told Plaintiff that she made more money than him.  MacAdam allegedly came to her office late in the day and stated:  "Hello, my name is Lloyd MacAdam, . . . You make more money than I do, do you know that?  It shouldn't be that way."  ECF No.18 at PageID #: 147; ECF No. 34-1 at PageID #: 988, ¶ 3; ECF No. 34-3 at PageID #: 996.  MacAdam also allegedly stated:  "we both went to school at the University of Akron but he did not remember me, and he said, But you are that girl who wears leather in the field" in District 4."  ECF No.18 at PageID #: 149; ECF No. 34-1 at PageID #: 988, ¶ 3; ECF No. 34-3 at PageID #: 996.  MacAdam denies this interaction.  ECF No. 22 at Page ID #: 556.

On February 10, 2011, Plaintiff and MacAdam attended an Ohio Contractor's Association ("OCA") event in Akron.  MacAdam told her he liked her skirt.  He kept hovering around her during her question and answer time with contractors and kept interrupting her conversations.  He also excluded her from conversations about the construction program.  She was standing at the table by the District 11 materials displayed for contractors.  MacAdam brought her a glass of wine and stated "come on lets go and enjoy the wine, no one will need any more information."  He insisted that she sit next to him.  Thereafter, Plaintiff declined to go to a bar on the Portage Lakes with him after the event.  ECF No. 34-1 at PageID #: 988, ¶ 3; ECF No. 34-3 at PageID #: 996.

On March 28, 2011 at the ODOT/OCA Conaway conference, Plaintiff was on the DCE panel as a presenter.  ECF No. 18 at PageID #: 168, 172.  At the table where she was to sit with MacAdam and others, MacAdam kept pulling the chair he reserved for Plaintiff closer to him and patted the chair to get her to sit next to him.  ECF No. 18 at PageID #: 168.  Plaintiff felt restricted, as if MacAdam was requesting her to sit there, when she wanted to get up and interact with her counterparts on the panel.  ECF No. 18 at PageID #: 169-70, 172.  According to Plaintiff, she felt this conduct was inappropriate sexual harassment.  ECF No. 18 at PageID #: 173.  ECF No. 34-1 at PageID #: 988, ¶ 3; ECF No. 34-3 at PageID #: 996.

In another matter in May-June 2011, a male subordinate of Plaintiff filed a charge of discrimination with the OCRC alleging discrimination by MacAdam.  ECF No. 18 at PageID #: 185; ECF No. 34-1 at PageID #: 988, ¶ 3; ECF No. 34-3 at PageID #: 996.  Plaintiff took exception to the manner in which MacAdam portrayed her, in her words as a damsel in distress, in a narrative he had prepared about the discrimination claim.  ECF No. 18 at PageID #: 183-84.  She felt MacAdam commented on her inability to handle her male subordinate and that she needed help with the situation.  ECF No. 18 at PageID #: 183-87.

On January 3, 2012, Plaintiff attended a 50th birthday party held for MacAdam.  She arrived with a cake she had purchased at a local bakery.  MacAdam approached her and asked what she made for him.  Plaintiff showed him the cake; he took a piece and they sat down; he took a bite and threw it in a trash can right in front of her and said "All the other ladies here took their time and baked and cooked for me."  ECF No. 18 at PageID #: 152; 147-51; ECF No. 34-1 at PageID #: 988, ¶ 3; ECF No. 34-3 at PageID #: 997.

At the January 26, 2012 OCA/ODOT Forecasters Night program, MacAdam insisted that Plaintiff sit next to him. He kept patting the seat where he wanted her to sit. ECF No. 34-1 at PageID #: 988, ¶ 3; ECF No. 34-3 at PageID #: 997. He brought her a glass of wine and said "we are sophisticated and we're probably the only sophisticated wine drinkers in this place." Plaintiff placed the glass of wine behind the display and stayed at the display as long as she could to avoid going back to the table to sit with MacAdam. ECF No. 18 at PageID #: 175. Plaintiff contends the patting of the seat and MacAdam bringing her a glass of wine constitutes sexual harassment, that bringing her a glass of wine in a social setting, has "connotations" to it, particularly since she did not ask for the wine. ECF No. 18 at PageID #: 179, 216-17. Plaintiff never saw MacAdam bring a glass of wine to anyone else. ECF No. 18 at PageID #: 176.

On February 16, 2012, at an OCA event that Plaintiff and MacAdam attended as representatives of District 11 to promote the District's construction program, she and MacAdam were standing in front of the District 11 booth and he introduced her to contractors as his "Vanna" (Vanna White from Wheel of Fortune). ECF No. 18 at PageID #: 153-54, 156-58. According to Plaintiff, MacAdam continued to interrupt her and prevented her from participating in various discussions. He then arranged the seating so she could not sit at his table. ECF No. 34-1 at PageID #: 988, ¶ 3; ECF No. 34-3 at PageID #: 997.

On March 20-21, 2012 at the OCA/ODOT Conaway Conference, MacAdam again insisted that they sit together. MacAdam made an off-hand comment to Plaintiff that he would get her for her 50th birthday. She was occupied speaking to other people and would not exclusively sit with him over the course of the conference. Plaintiff was on the steering

committee and had other obligations for the program. As the evening went on, she noticed that MacAdam became angry with her. He treated her with disdain at an after-hours event and he spent considerable time with an area engineer from District 11   Nick Susich. ECF No. 34-1 at PageID #: 988, ¶ 3; ECF No. 34-3 at PageID #: 997-98.

At other OCA events, MacAdam would interrupt Plaintiff's conversations with contractors. ECF No. 18 at PageID #: 155, 163, 168. She never observed him interrupting men. ECF No. 18 at PageID #: 155. MacAdam interrupted female employees of District 11 at meetings in the District. ECF No. 18 at PageID #: 166. Plaintiff did not observe MacAdam interrupt male employees of District 11 in this manner. ECF No. 18 at PageID #: 167.

MacAdam would also make comments about Plaintiff's clothing. He would say "I like your skirt" or "I like your blouse." ECF No. 18 at PageID #: 179. She never heard him say this to anyone else, including men. ECF No. 18 at PageID #: 179-80, 191. When Plaintiff was around MacAdam, there usually were no women around because it is a male dominated industry. ECF No. 18 at PageID #: 179. Plaintiff felt that a male supervisor making comments about articles of clothing, such as a blouse or skirt, is referring to parts of a woman's body and is inappropriate. ECF No. 18 at PageID #: 180.

Plaintiff also contends that photographs of her were purposefully omitted from the hallways of the District 11 headquarters building. ECF No. 18 at PageID #: 192-93. When she first arrived at District 11, there were photographs of all heads of departments. ECF No. 18 at PageID #: 193, 197. Despite the fact she held the DCE position, there were no photographs of her. ECF No. 18 at PageID #: 193. Under MacAdam, photos were placed throughout the

hallways; no photos of Plaintiff appeared.  ECF No. 18 at PageID #: 194-95.  After she was not selected for the DCA position, other employees in District 11 were promoted to department head positions and photographs of them were put up.  ECF No. 18 at PageID #: 196-98.  Plaintiff maintains the lack of her photo is yet another example of what happened due to her refusal to go along with MacAdam's "program," *i.e.*, being subservient to him and submitting to his treatment of her based on her gender.  ECF No. 18 at PageID #: 199-200.

On April 9, 2012, MacAdam summoned Plaintiff to his office and informed her that she would not be the DCA and that her subordinate area engineer, Nick Susich   his "right hand man"   would be appointed.  Later that day, MacAdam sent an email to "everyone" announcing that he had appointed Susich as the DCA and stated "as all of you know, he is a true professional and is well respected in his field."  ECF No. 34-1 at PageID #: 988, ¶ 3; ECF No. 34-3 at PageID #: 998.  MacAdam had told Plaintiff that she was not respected in the industry and was never accepted by District 11.  ECF No. 18 at PageID #: 204-207; ECF No. 34-1 at PageID #: 988, ¶ 3; ECF No. 34-3 at PageID #: 998.  MacAdam told Plaintiff it was too much for her to be promoted from a TE3 in District 4 to a TE5, "you're a victim, the people in District 11 were never going to give you a chance. . . .  You'll never gain their respect, you're an outsider, you'll never fit in here. . . .  Even the industry doesn't respect you . . . [a]nd I can't have you around when the industry doesn't respect you."  ECF No. 18 at PageID #: 236.  He then stated:  "I'm just going to give the job to its rightful owner, Mr. Susich.  He was your right-hand man so might as well let him do the job.  He's . . . the right man for the job."  ECF No. 18 at PageID #: 236; ECF No. 34-1 at PageID #: 988, ¶ 3; ECF No. 34-3 at PageID #: 998.

Plaintiff disputes this as her performance evaluations from the time period she was DCE and MacAdam was Deputy Director do not reflect any issues with her performance. *See* ECF Nos. 22-1 and 22-2. She was never counseled or otherwise informed that there were issues with her performance as DCE. ECF No. 34-1 at PageID #: 988-89, ¶¶ 4-5. Plaintiff's performance evaluations (ECF Nos. 34-4, 34-5, 34-6, 34-7) do not reflect any issues with her performance. Murgida last performed the DCE duties on May 26, 2012, at which time Susich took over as DCA. According to Plaintiff, MacAdam did get her for her 50th birthday, which was May 26, 2012. She was assigned the duties of an area engineer in Tuscarawas and Holmes counties. ECF No. 34-1 at PageID #: 988, ¶ 3; ECF No. 34-3 at PageID #: 998.

Although there is dispute about the substance, intent, context, and details of these interactions between Plaintiff and MacAdam, there is no dispute about the timeframe. The last allegedly hostile direct interaction Plaintiff had with MacAdam was when he informed her that he had selected Susich as the DCA in April 2012. Plaintiff does not present any additional allegations of discriminatory interactions with MacAdam after that date.

Plaintiff filed her first discrimination charge on June 16, 2016. ECF No. 29-3. Many of Plaintiff's alleged sexually harassing acts occurred well outside of the established 300-day statute of limitation for Title VII claims. 42 U.S.C. § 2000e-5(e). The effect of this time delay is to bar from consideration any claims of harassment or hostile work environment or retaliation that occurred prior to August 21, 2015. *Alexander v. Local 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 407-408 (6th Cir. 1999).

Plaintiff makes three claims under Title VII: (1) that she was forced to work in a gender/sex based hostile work environment; (2) that she suffered discrimination on the basis of gender/sex; and, (3) that she suffered retaliation. Plaintiff concedes the retaliation claim by stating that it will not be pursued. ECF No. 34 at PageID #: 959 n. 1.[3]

## II. Standard of Review

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial." *Guarino v. Brookfield Twp. Trustees.*, 980 F.2d 399, 403 (6th Cir. 1992).

Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of genuine dispute. An opposing party may not simply rely on its pleadings. Rather, it must "produce evidence that results in a conflict of

---

[3] The pre-filing written exchange required by ¶ 14 of the Case Management Plan (ECF No. 10 at PageID #: 79) should have obviated the need for the Court's attention to be drawn to unopposed arguments.

15

material fact to be resolved by a jury." *Cox v. Ky. Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). The non-moving party must, to defeat the motion, "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

The United States Supreme Court, in deciding *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), stated that in order for a motion for summary judgment to be granted, there must be no genuine issue of material fact. *Id.* at 248. The existence of some mere factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A fact is "material" only if its resolution will affect the outcome of the lawsuit. In determining whether a factual issue is "genuine," the court must decide whether the evidence is such that reasonable jurors could find that the non-moving party is entitled to a verdict. *Id.* Summary judgment "will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990). The existence of a mere scintilla of evidence in support of the non-moving party's position ordinarily will not be sufficient to defeat a motion for summary judgment. *Id.*

## III. Analysis

### A. Gender/Sex-based Hostile Work Environment

To establish a prima facie case of a hostile work environment based on gender/sex, a plaintiff must show that: (1) she is a member of a protected class, (2) she was subjected to unwelcome sexual harassment, (3) the harassment was based on her sex, (4) the harassment created a hostile work environment, and that (5) the employer is vicariously liable. *Clark v. United Parcel Service, Inc.*, 400 F.3d 341, 347 (6th Cir. 2005). Hostile work environment claims involve repeated conduct and are based on the cumulative effect on individual acts. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). "[B]ecause the entire hostile work environment encompasses a single unlawful employment practice," an employee may "base a suit on individual acts that occurred outside the statute of limitations unless it would have been unreasonable to expect the plaintiff to sue before the statute ran on such conduct." *Id.* at 117-18.

When a continuing violation is found, "a plaintiff is entitled to have the court consider all relevant actions allegedly taken pursuant to the employer's discriminatory policy or practice, including those that would otherwise be time barred." *Alexander*, 177 F.3d at 408. A continuing violation can be demonstrated by "a pattern of similar discriminatory acts continuing from the period prior to the limitations period." *Komac v Gordon Food Service*, 3 F. Supp.2d 850, 854 (N.D. Ohio 1998) (Wells, J.), quoting *Gallagher v. Croghan Colonial Bank*, 89 F.3d 275, 278 (6th Cir. 1996); *see also Adams v. Tennessee Dept. of Finance and Admin.*, 179 Fed.Appx. 266, 275 (6th Cir 2006). "The unlawful employment practice therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete

acts, a single act of harassment may not be actionable on its own. *Nat'l R,R.*, 536 U.S. at 115 (internal quotation marks omitted).

According to Plaintiff, it is the initiation of the audit in 2015 that constitutes a further act in the continuing gender/sex based hostile work environment perpetuated by MacAdam. Defendant was advised of DAS's determination that Plaintiff's proper classification was TE3 in a December 11, 2015 letter (ECF No. 19-7). This act falls within the Title VII 300-day limitations period and thus could form a basis for an actionable continuing violation, the gender based hostile work environment, by causing Plaintiff actual harm — pay loss. Plaintiff argues the initiation of the audit, under the pretextual guise of poor performance, bad attitude and earning more than MacAdam, is discrimination against Plaintiff "with respect to [her] compensation, terms, conditions, or privileges of employment, because of . . . sex. . . ." 42 U.S.C. §2000e-2(a)(1). It is to be noted that Susich, Plaintiff's direct supervisor, was not originally aware of a mechanism to fix the anomaly of having a TE5 on staff, but no TE5 positions existed on the template table of organization he was supposed to follow. But, he supported the audit of Plaintiff when it was proposed by MacAdam. Deposition of Nick Susich (ECF No. 20) at PageID #: 474-78.

Defendant argues the 2011 and 2012 acts Plaintiff claims were discriminatory are not a logical extension of Murgida's charges filed in 2016. ECF No. 28 at PageID #: 772. The Sixth Circuit rule for EEOC charges states that a subsequent judicial complaint "is limited to the scope of the EEOC investigation 'reasonably expected' as a result of the discrimination charge filed." *Cedar v. Premier Indus. Corp.*, No. 88-3340, 1989 WL 20615, at *3 (6th Cir. Feb. 28, 1989)

(5:17CV0229)

(citing *Farmer v. ARA Serv., Inc.*, 660 F.2d 1096, 1105 (6th Cir. 1981)).  Plaintiff's gender/sex-

based hostile work environment claim is within the scope of the OCRC/EEOC investigations and

could reasonably be expected to have grown out of Murgida's administrative complaints filed

without the benefit of counsel.  Here, OCRC Charge No. AKR73(38394)06162016 (EEOC

Charge No. 22A-2016-02099C) (ECF No. 29-3) and EEOC Charge 532-2016-01679 (ECF

No. 1-3) explicitly mention sexual harassment.  Therefore, the Court concludes Plaintiff's claim

before the Court does not exceed the scope of her administrative complaints.

    **B.  Claim for Gender/Sex-based Discrimination**[4]

    To make out a prima facie case of gender/sex discrimination, Plaintiff must show that:

(1) she is a member of a protected class; (2) she was subjected to an adverse employment action;

(3) she was qualified for the position; and (4) she was replaced by a person outside the protected

class, or similarly situated non-protected employees were treated more favorably.  *Peltier v.*

*United States*, 388 F.3d 984, 987 (6th Cir. 2004).  Notably, "a court may not consider the

employer's alleged nondiscriminatory reason for taking an adverse employment action when

analyzing the prima facie case."  *Wexler v. White's Fine Furniture*, 317 F.3d 564, 574 (6th Cir.

2003).

---

[4] Defendant argues that Plaintiff relies on the "cat's paw" theory of liability
adopted by the Supreme Court in *Staub v. Proctor Hosp.*, 562 U.S. 411 (2011), for her
claim of sex discrimination arising out of the 2015 audit.  Reply Memorandum (ECF No.
35) at PageID #: 1037-38.  The Court need not address the argument at this time.  *United*
*States v. Gonzalez*, No. 3:16-cr-82-DJH, 2017 WL 4875277, at *2 n.2 (W.D. Ky. Oct. 27,
2017) ("Courts ordinarily refuse to consider arguments raised for the first time in a reply
brief." (citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008)).

If Plaintiff is successful in her initial burden of submitting evidence to support a prima facie case of discrimination, the burden shifts to Defendant to "articulate some legitimate, nondiscriminatory reason" for the audit of Plaintiff's job classification and denial of a cost of living increase. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see also Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). If Defendant carries this burden, Plaintiff then has an opportunity to prove that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Burdine*, 450 U.S. at 254-56; *McDonnell Douglas*, 411 U.S. at 804. Plaintiff may show that the employer's stated grounds are pretextual "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256. Throughout this process, it is essential to remember that the ultimate burden of persuading the trier of fact that Defendant intentionally discriminated against Plaintiff never leaves the plaintiff. *Id.* at 253.

In Justice O'Connor's concurring opinion in *Nat'l R.R. Passenger Corp. v. Morgan*, she noted

> The Court today holds that, for discrete discriminatory acts, § 2000e-5(e)(1) serves as a form of statute of limitations, barring recovery for actions that take place outside the charge-filing period. The Court acknowledges, however, that this limitations period may be adjusted by equitable doctrines. See *ante*, at 114, n. 7; see also *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) ("We hold that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling"). Like the Court, I see no need to resolve fully the application of the discovery rule to claims based on discrete discriminatory acts. See *ante*, at 114, n. 7. I believe, however, that some version of the discovery rule applies to discrete-act claims. See 2 B. Lindemann & P. Grossman, Employment Discrimination Law 1349 (3d

ed. 1996) ("Although [Supreme Court precedents] seem to establish a relatively simple 'notice' rule as to when discrimination 'occurs' (so as to start the running of the charge-filing period), courts continue to disagree on what the notice must be *of*" (emphasis in original)). . . .

*Id.* at 123-24. The Supreme Court in *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007), *superseded by statute*, Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111 2, 123 Stat. 5, again declined to address the discovery rule in the context of pay discrimination suits under Title VII. *Id.* at 642 n. 10.

The Sixth Circuit has not adopted the discovery rule in discrete act claims under Title VII, but may be amenable in a situation in which an employee's claim would be saved by application of the rule where even a diligent employee could not have reasonably discovered any discrimination at the time an event actually occurred. *Vaughn v. Louisville Water Co.*, 302 Fed.Appx. 337, 343-44 (6th Cir. 2008); *Cline v. BWXT Y-12, LLC*, 521 F.3d 507, 512 (6th Cir. 2008).

It appears from the record in the case at bar that Plaintiff did not have notice of MacAdam's 2012 request to initiate a job audit of her position more than 300 days before she filed her OCRC/EEOC discrimination charges. Plaintiff argues this is an appropriate Title VII case to apply the discovery rule to afford her the opportunity to litigate her gender/sex-based discrimination claim that she could not have discovered with reasonable diligence. Plaintiff did discover MacAdams' 2012 audit attempt in early 2015. *See* ECF No. 22-5. Therefore, she wants to pursue a claim she has arising out of MacAdam's prior action outside the limitations period. According to Plaintiff, had she known in 2012 that MacAdam was attempting to initiate a job

audit, many of the gender/sex-based actions he engaged in toward her may well have been actionable if she had filed a charge of discrimination with the OCRC/EEOC at that time.

"When a statute does not speak to the issue, federal courts will generally apply the discovery rule to toll the running of the statute of limitations until the plaintiff discovers or should have discovered his or her injury." *Guy v. Mercantile Bank Mortgage Co.*, 711 Fed.Appx. 250, 252-53 (6th Cir. 2017), citing *Rotella v. Wood*, 528 U.S. 549, 555 (2000). The discovery rule is applied when the plaintiff, "due to facts and circumstances not within his control," has no knowledge that an injury occurred. *Univ. of Pittsburgh v. Townsend*, 542 F.3d 513, 527 (6th Cir. 2008).

As stated in *Campau v. Orchard Hills Psychiatric Center*, 946 F. Supp. 507 (E.D. Mich. Nov. 19, 1996),

> The discovery rule "postpones the beginning of the limitations period from the date when the plaintiff is wronged to the date when he discovers he has been injured. . . ." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir.1990) (Posner, J.), *cert. denied*, 501 U.S. 1261, 111 S.Ct. 2916, 115 L.Ed.2d 1079 (1991). "It is not the date on which the wrong that injures the plaintiff occurs, but the date   often the same, but sometimes later   on which the plaintiff discovers that he has been injured." *Id.*  For instance, where an employer decides to terminate an employee for an allegedly discriminatory reason but does not convey to the employee the decision to terminate him until a later date, the limitations period would begin to run on the date that the employee is notified of his termination and not on the date that the decision to terminate was made. Furthermore, it is the plaintiff's awareness of actual injury, as opposed to legal injury, that suffices to trigger the running of the statutory period. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1386 (3rd Cir. 1994) (citing *Cada*, 920 F.2d at 450).

*Id.* at 511.

The Court will apply the discovery rule in the case at bar. Therefore, Plaintiff may pursue evidence of MacAdam's 2012 audit attempt, which could also bring other asserted discriminatory acts of MacAdam in 2011-2012 into Plaintiff's claim for gender/sex discrimination. Given this evidence, a reasonable jury could conclude that the proffered reasons for the 2015 audit of Plaintiff's job classification and denial of a cost of living increase are actually a pretext for unlawful discrimination.

According to Defendant, "[w]hile Murgida might wish this Court to find a causal link between her rebuffing MacAdam's alleged advances and the 2012 attempted audit, the timing of MacAdam's audit request makes it equally likely that MacAdam was reacting to the change in her duties once Susich became DCA." ECF No. 35 at PageID #: 1036. In deciding a motion for summary judgment, the court should not weigh the evidence, make credibility determinations, or judge the truth of the matter asserted, but it must draw all "justifiable inferences" in the light most favorable to the non-movant. *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003) (citing *Anderson*, 477 U.S. at 255); *Smith v. Campbell*, 250 F.3d 1032, 1036 (6th Cir. 2001); *Adams v. Metiva*, 31 F.3d 375, 384 (6th Cir. 1994).

The Court points out that Plaintiff may also rely on evidence which, although barred by a statute of limitations as independently actionable conduct, is admissible to prove motive or intent. *See Black Law Enforcement Officers Ass'n v. City of Akron, Ohio*, 824 F.2d 475, 482-83 (6th Cir. 1987); *Wells v. New Cherokee Corp.*, 58 F.3d 233, 236 (6th Cir. 1995) (noting that the plaintiff "may offer" a defendant's time-barred "conduct as evidence of its motivation"); *Migra v. Ohio Dept. of Rehabilitation and Correction*, No. 1:95CV2774 (N.D. Ohio filed November 27,

(5:17CV0229)

1996) (Matia, J.), *aff'd*, No. 97-3284, 1998 WL 344034 (6th Cir. May 28, 1998); *Herendeen v. Michigan State Police*, 39 F.Supp.2d 899, 907 (W.D. Mich. 1999).

### IV.  Conclusion

Viewing Plaintiff's probative evidence and all reasonable inferences drawn therefrom in the light most favorable to Plaintiff,

Defendant Ohio Department of Transportation's ("ODOT") Motion for Summary Judgment (ECF No. 28) is denied.


IT IS SO ORDERED.


 June 19, 2018                           */s/ Benita Y. Pearson*            
Date                                      Benita Y. Pearson
                                       United States District Judge